# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**JESSE W BUCK**,<br><br>　　　　　Debtor. | Case No. **10-60383-7** |
| **UNITED STATES TRUSTEE**,<br><br>　　　　　Plaintiff.<br>-vs-<br>**JESSE W BUCK**,<br><br>　　　　　Defendant. | Adv No. **10-00097** |

## MEMORANDUM OF DECISION

At Butte in said District this 10th day of March, 2011.

In this adversary proceeding the Plaintiff United States Trustee ("UST") filed on February 4, 2011, a Motion (Docket No. 12) seeking summary judgment against Defendant Jesse W. Buck ("Buck") together with a Statement of Uncontroverted Facts ("SOUF"), supporting memorandum, and exhibits. The UST moves for summary judgment denying Buck's discharge under 11 U.S.C. §§ 727(a)(2)(A) and (B) for transferring or concealing property with intent to

1

hinder, delay or defraud creditors and the Trustee, and under § 727(a)(4) for knowingly and fraudulently making false oaths on his Schedules and SOFA by failing to list property and transfers of property. Buck filed a response (Dkt. 16) in opposition in which he admits the transfers and failure to disclose property, but denies that the transfers and omissions were made with fraudulent intent and argues that he amended his petition to address the UST's "concerns with the tax refund, the three horses, the utility trailer, and the riding lawn mower." Buck did not file a Statement of Genuine Issues as provided at Montana Local Bankruptcy Rule ("Mont. LBR") 7056-1(a)(2)[1]. The Court has reviewed the Motion and Buck's response, and the UST's reply, together with the record and applicable law. This matter is ready for decision. For the reasons set forth below, the UST's Motion for summary judgment will be granted and Judgment entered denying Buck's discharge under §§ 727(a)(2) and (a)(4).

This Court has jurisdiction in this adversary proceeding under 28 U.S.C. § 1334(b). The UST's objections to Buck's discharge are core proceeding under 28 U.S.C. § 157(b)(2)(J). This Memorandum of Decision includes the Court's findings of fact and conclusions of law pursuant to F.R.B.P. 7052.

## FACTS

The UST filed with its Motion a SOUF, declaration of Plaintiff's attorney Daniel P. McKay, and a memorandum. In addition the UST submitted three (3) exhibits ("Ex.") with its

---

[1] LBR 7056-1(a)(2) provides: "Statement of Genuine Issues. Opposition to a motion for summary judgment, if any, must be filed within fourteen (14) days after the motion is served and must comply with Mont. LBR 9013-1. A separately identified, short, and concise "Statement of Genuine Issues", setting forth the specific facts which the opposition party asserts establish a genuine issue of material fact precluding summary judgment in favor of the moving party, must be filed by the party opposing the motion together with an opposition brief."

2

Motion, including bankruptcy documents filed in the above-captioned case (Ex. 1), transcripts of the 11 U.S.C. § 341(a) meeting of creditors held in Case No. 10-60383-7 on March 30, 2010 (Ex. 2), and transcript of the Rule 2004 examination of Buck held on October 8, 2010 (Ex. 3). The SOUF sets forth the following facts:

1. Jesse W. Buck ("Defendant") filed a petition under chapter 7 of the Bankruptcy Code on March 5, 2010, together with Schedules, and Statement of Financial Affairs. Ex. 1.

2. Defendant signed his Voluntary Petition, Schedules and Statement of Financial Affairs under penalty of perjury on March 5, 2010. Ex. 1.

3. The Bankruptcy Code § 341(a) ("the 341") meeting of creditors was held on March 30, 2010. The Defendant appeared and answered questions from the trustee, Richard Samson, under oath. Ex. 2.

4. Defendant testified during the 341 that he had reviewed his petition, schedules, and Statement of Financial Affairs in advance of the meeting and the information in them was true and correct. Ex. 2, pages 4, 8.

5. Defendant testified during the 341 that he was expecting a tax refund of $2,000. Ex. 2, pg. 18.

6. Trustee Samson told Defendant not to spend the refund. Ex. 2, pages 18, 20.

7. Defendant testified that he understood that he was not to spend the refund. Ex. 2, page 20.

8. Defendant received his federal tax refund sometime after April 15, 2010. Ex. 3, page 61.

9. Defendant spent the refund knowing that he was not supposed to. Ex. 3 page 62.

10. Defendant transferred three horses and a horse trailer to a friend, Robin Morton, within one year prior to filing his chapter 7 bankruptcy case. Ex. 3, pages 25, 68-69.

12. Defendant did not disclose the transfer of the horses and horse trailer in his Statement of Financial Affairs. Ex. 1.

13. Defendant's testimony regarding the transfer of the horses was contradictory. First, he testified he gave the horses to Mr. Morton because he could not afford to feed them. Then he testified they were payment for a debt he owed to Mr. Morton. Ex. 3, page 24.

       14. Defendant testified that he transferred the horse trailer to Mr. Morton in repayment of the debt he owed Morton. Ex. 3, page 69.

       15. Defendant did not disclose the transfers of the horses and the horse trailer on his Statement of Financial because he wanted to protect his friend. Ex. 3, pages 69, 70.

       16. Defendant did not disclose a riding lawnmower he owned on his schedules. Ex. 1, Ex. Ex. 3, pages 30, 79.

       17. Defendant did not disclose a flatbed trailer he owned on his schedules. Ex. 1, Ex. Ex. 3, page 78.

In addition to the above-listed facts from the UST's SOUF, the docket in Buck's Case No. 10-60383-7 reflects that he filed amended schedules and Statement of Financial Affairs ("SOFA") on November 12, 2010, almost seven and one-half months after he filed his Chapter 7 petition, and two weeks after the UST commenced this adversary proceeding.

Summary judgment in this Court is governed by Federal Rules of Bankruptcy Procedure 7056 and by Montana Local Bankruptcy Rule ("Mont. LBR") 7056-1.  Rule 7056-1(a)(2) requires that an opposition to a motion for summary judgment must be filed within fourteen (14) days after the motion is served, and a separate "Statement of Genuine Issues" setting forth specific facts which preclude summary judgment in favor of the moving party, must be filed by the party opposing the motion together with an opposition brief.  Rule 7056-1(a)(3) provides: "All material facts in the moving party's Statement of Uncontroverted Facts are deemed to be admitted unless controverted by a Statement of Genuine Issues filed by the opposing party."

The UST served its Motion for summary judgment, SOUF, memorandum and exhibits on Buck by first class mail, and on Buck's attorney S. Charles Sprinkle ("Sprinkle") electronically. Buck filed a response in opposition, but did not file a Statement of Genuine Issues within the time permitted by Rule.  Therefore, by operation of LBR 7056-1(a)(3), all material facts in the

UST's SOUF which are quoted above are deemed admitted.

## DISCUSSION

### I. Summary Judgment.

Summary judgment is governed by FED. R. BANKR. P. 7056. Rule 7056, incorporating FED. R. CIV. P. 56(c), states that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." "The proponent of a summary judgment motion bears a heavy burden to show that there are no disputed facts warranting disposition of the case on the law without trial." *Younie v. Gonya (In re Younie)*, 211 B.R. 367, 373 (9th Cir. BAP 1997) (quoting *Grzybowski v. Aquaslide "N' Dive Corp. (In re Aquaslide "N" Dive Corp.)*, 85 B.R. 545, 547 (9th Cir. BAP 1987)).

When seeking summary judgment, the moving party must initially identify those portions of the record before the Court which it believes establish an absence of material fact. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987). If the moving party adequately carries its burden, the party opposing summary judgment must then "set forth specific facts showing that there is a genuine issue for trial." *Kaiser Cement Corp. v. Fischback & Moore, Inc.*, 793 F.2d 1100, 1103-04 (9th Cir. 1986), *cert. denied*, 469 U.S. 949 (1986); FED. R. CIV. P. 56(e). *See also Frederick S. Wyle Prof'l. Corp. v. Texaco, Inc.*, 764 F.2d 604, 608 (9th Cir. 1985) ("the opponent must affirmatively show that a material issue of fact remains in dispute"). That is, the opponent cannot assert the "mere existence of some alleged factual dispute between the parties." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Moreover, "[a] party opposing summary judgment may not

simply question the credibility of the movant to foreclose summary judgment." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

To demonstrate that a genuine factual issue exists, the objector must produce affidavits which are based on personal knowledge and the facts set forth therein must be admissible into evidence. *Aquaslide*, 85 B.R. at 547. All reasonable doubt as to the existence of genuine issues of material fact must be resolved against the moving party. *Liberty Lobby,* 477 U.S. at 247-48, 106 S.Ct. at 2509. If a rational trier of fact might resolve disputes raised during summary judgment proceedings in favor of the nonmoving party, summary judgment must be denied. *T.W. Elec. Serv.*, 809 F.2d at 630; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 202 (1986). Thus, the Court's ultimate inquiry is to determine whether the "specific facts" set forth by the nonmoving party, viewed along with the undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence. *T.W. Elec. Serv.*, 809 F.2d at 631. In the absence of any disputed material facts, the inquiry shifts to whether the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552-53.

After review of the exhibits filed with the UST's Motion, including Buck's Schedules and SOFA, and the transcripts of Buck's § 341 meeting and Rule 2004 examination, and based upon Buck's failure to file a Statement of Genuine Issues, the Court finds that the UST has satisfied its initial burden of establishing that there are no genuine issues as to any material fact. Buck's answer to the amended complaint, and his brief, corroborate the UST's factual allegations in the SOUF that he spent his $2,000 tax refund, in defiance of the Trustee's admonition, that he transferred 3 horses and horse trailer and failed to disclose them in his schedules and failed to

disclosure the transfer in his SOFA, and that he failed to disclose his flatbed trailer and riding mower. The UST's three exhibits also establish those uncontroverted facts. As the Ninth Circuit Bankruptcy Appellate Panel ("BAP") held *In re Beverly*, 374 B.R. 221, 237 (9th Cir. BAP 2007):

> These statements are properly part of the summary judgment evidence because they were proffered by the trustee as affidavit exhibits and, in the words of Rule 56(e), "would be admissible in evidence." Fed.R.Civ.P. 56(e), incorporated by Fed. R. Bankr.P. 7056. Specifically, Beverly's own statements, when offered against him, are admissions that are not hearsay. Fed.R.Evid. 801(d)(2). It was established that during depositions Beverly authenticated the letters containing these statements.

Buck failed to accompany his opposition brief with affidavits which are based on personal knowledge and set forth facts which are admissible into evidence. *Aquaslide*, 85 B.R. at 547. Thus Buck offered no affidavits or other exhibits which create a genuine issue of material fact. *Id.* Buck's answer and opposition brief both admit that he spent the tax refund, concealed transfers and failed to disclose assets, but in both the answer and brief Buck contends that he did not do so with intent to hinder, delay or defraud a creditor or the Trustee.

Buck's answer and opposition brief do not satisfy the requirement that the opposing party produce affidavits based on personal knowledge. Buck did not sign the answer or opposition brief, his attorney Sprinkle did. Sprinkle's statements in Buck's answer and opposition brief asserting Buck's lack of fraudulent intent or intent to hinder, delay or defraud, are attorney argument, not evidence, and attorney argument is not admissible in evidence and therefore not relevant. *Hurley v. Student Loan Acquisition Auth. of Ariz., et al.*, (*In re Hurley*), 258 B.R. 15, 23 (Bankr. D. Mont. 2001) (An attorney's argument is not evidence); *United States v. Velarde-Gomez*, 224 F.3d 1062, 1073 (9th Cir. 2000); *Exeter Bancorporation v. Kemper Securities Group, Inc.*, 58 F.3d 1306, 1312 n.5 (8th Cir. 1995) (Statements of counsel are not

10-00097-RBK Doc#: 23 Filed: 03/10/11 Entered: 03/10/11 10:35:11 Page 8 of 19

evidence and do not create issues of fact), citing *United States v. Fetlow*, 21 F.3d 243, 248 (8th Cir. 1994), *cert. denied*, 513 U.S. 977, 115 S.Ct. 456, 130 L.Ed.2d 365 (1994).

## II. § 727(a).

Certain principles or factors are common and apply to each of the UST's claims for denial of discharge under § 727(a). First, "[i]n keeping with the 'fresh start' purposes behind the Bankruptcy Court, courts should construe § 727 liberally in favor of the discharge and strictly against a person objecting to the discharge." *In re Retz*, 606 F.3d 1189, 1196 (9th Cir. 2010) (quoting *Bernhard v. Sheaffer (In re Bernard)*, 96 F.3d 1279, 1281 (9th Cir. 1996)); *Roberts v. Erhard (In re Roberts)*, 331 B.R. 876, 882 (9th Cir. BAP 2005) (citing *First Beverly Bank v. Adeeb (In re Adeeb)*, 787 F.2d 1339, 1342 (9th Cir. 1986)).

The principal purpose of the Bankruptcy Code is to grant a "fresh start" to the "honest but unfortunate debtor." *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367, 127 S.Ct. 1105, 1107, 166 L.Ed.2d 956 (2007). The "fresh start" is explained by the Ninth Circuit Bankruptcy Appellate Panel *In re Albarran*, 347 B.R. 369, 379 (9th Cir. BAP 2006):

> The general policy of bankruptcy law favors allowing an honest debtor to discharge debts and to make a fresh start free from the burden of past indebtedness. *See Lines v. Frederick*, 400 U.S. 18, 19, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970). Thus, because a debtor in bankruptcy is assumed to be poor but honest, there is a presumption that all debts are dischargeable unless a party who contends otherwise proves, with competent evidence, an exception to discharge. *See Brown v. Felsen*, 442 U.S. 127, 128-29, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979); Hon. Barry Russell, BANKRUPTCY EVIDENCE MANUAL ¶ 301.60, p. 870 (2006 ed.).
>
> The corollary to this policy is that only the "honest but unfortunate" debtor is entitled to an entirely unencumbered fresh start. *Grogan v. Garner*, 498 U.S. 279, 286-87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

*Grogan v. Garner*, in further explaining the "fresh start" policy of the Bankruptcy Code,

8

states that "a central purpose of the Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.' *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934)." 498 U.S. at 286, 111 S.Ct. at 659. The party seeking to deny the debtor's discharge bears the burden of proof, which under § 727 is a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. at 289; *In re Searles*, 317 B.R. 368, 376 (9th Cir. BAP 2004), *aff'd.*, 212 Fed.Appx. 589 (9th Cir. 2006). The burden on the objector is to show actual rather than constructive intent on the part of the debtor. *Retz*, 606 F.3d at 1196; *Khalil v. Developers Sur. & Indem. Co. (In re Khalil)*, 379 B.R. 163, 172 (9th Cir. BAP 2007), *aff'd*, 578 F.3d 1167, 1168 (9th Cir. 2009).

    Counts One, Two and Three of the amended complaint object to Buck's discharge based upon § 727(a)(2) for his failure to turn over the $2,000 tax refund to the Trustee, failure to list the riding mower and flatbed trailer and child support payments in his Schedules, and his failure to list his transfer of 3 horses and a horse trailer on his SOFA. Buck admits those failures but argues that the omissions were inadvertent, and he denies that he acted with intent to hinder, delay or defraud the Trustee or any creditor. With respect to the horses Buck contends: "By transferring the horses he was arguably preserving assets of the bankrupt estate for the benefit of the creditors."

    Section 727(a)(2) which provides that the court shall grant the debtor a discharge unless –

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of
the estate charged with custody of property under this title, has transferred,
removed, destroyed, mutilated, or concealed, or has permitted to be transferred,

9

removed, destroyed, mutilated, or concealed –

>(A) property of the debtor, within one year before the date of the filing of the petition; or

>(B) property of the estate, after the date of the filing of the petition.

*Retz*, 606 F.3d at 1200; *Hansen v. Moore (In re Hansen)*, 368 B.R. 868, 876 (9th Cir. BAP 2007).

A party seeking denial of discharge under § 727(a)(2) must prove by a preponderance of the evidence: "1) a disposition of property, such as transfer or concealment, and 2) a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act [of] disposing of the property." *Retz*, 606 F.3d at 1200, quoting *Hughes v. Lawson (In re Lawson)*, 122 F.3d 1237, 1240 (9th Cir. 1997). Buck admits spending the tax refund, transferring the horses and trailer, and failing to disclose the flatbed trailer and riding mower. Therefore, the UST has satisfied the first requirement of § 727(a)(2) showing dispositions of property by Buck with respect to Counts One, Two and Three by Buck's admissions and the SOUF.

Buck argues that there is insufficient circumstantial evidence of fraudulent intent, that his omissions of the flatbed trailer and riding mower were unintentional and they were of nominal value, and that he received no money for the horses and horse trailer. However, "lack of injury to creditors is irrelevant for purposes of denying a discharge in bankruptcy." *Retz*, 606 F.3d at 1200, 1204, quoting *Adeeb*, 787 F.2d at 1343; *Bernard*, 96 F.3d at 1281-82. Thus, the nominal value of the undisclosed assets is irrelevant even if Buck's contentions were supported by affidavits or other admissible evidence[2].

Buck misconstrues the intent requirement under § 727(a)(2). A debtor's intent need not

---

[2] Buck does not contend that the $2,000 tax refund was of nominal value.

10

be fraudulent to meet the requirements of § 727(a)(2). *Retz*, 606 F.3d at 1200. Because the language of § 727(a)(2) is in the disjunctive, it is sufficient if the debtor's intent is to hinder or delay or defraud a creditor or trustee. *Id.,* citing *Bernard*, 96 F.3d at 1281; *Searles*, 317 B.R. at 379. In other words, intent to defraud need not be shown because mere proof of intent to hinder or to delay is sufficient. *Beverly*, 374 B.R. at 243, citing *Searles*. Therefore, Buck's contention that his failure to turn over the tax refund to the Trustee, failure to list the flatbed trailer and riding mower on his Schedule B, and failure to list the transfer of 3 horses and horse trailer on his SOFA, were not done with fraudulent intent, misapprehends the intent requirement under *Retz*, *Beverly*, and *Searles*, i.e., all that is required is proof of intent to hinder or to delay.

As discussed above, based on the UST's SOUF, and Buck's failure to file a Statement of Genuine Issues of material fact, this Court finds that the UST has satisfied its burden as the moving party of identifying portions of the record showing that no genuine issue of material fact exists in the record with respect to Buck's intent to hinder or delay the Trustee. The burden shifts to Buck, and by not filing a Statement of Genuine Issues Buck failed his burden to show that there is a genuine issue of material fact regarding his intent to hinder or delay the Trustee.

Buck's brief simply refers to the same transcripts submitted in support of the UST's Motion, with his attorney's interpretation of the transcripts. That attorney argument does not satisfy Buck's burden. Under § 727(a)(2), a debtor's intent to hinder or delay a creditor or trustee constitutes the requisite "intent penalized by the statute notwithstanding any other motivation he may have had for the transfer." *Beverly*, 374 B.R. at 246, quoting *Adeeb*, 787 F.2d at 1343.

As a debtor in bankruptcy Buck has enumerated duties under 11 U.S.C. § 521(a), including the duty to file Schedules and a SOFA under oath, and a specific duty at § 521(a)(3) "to

11

cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties ...."
The UST's SOUF at facts 5, 6, 7, 8, and 9 establish that the Trustee told Buck not to spend the tax refund, but that Buck "spent the refund knowing that he was not supposed to." From this, the Court finds and concludes that Buck intended to hinder or delay the Trustee in performing the Trustee's duty, which is described at 11 U.S.C. § 704(a)(1) and (2) as to collect and reduce to money property of the estate and be accountable for property received. Buck's excuse, that he spent the tax refund believing that he could replace it with other income, is irrelevant, *Beverly*, 374 B.R. at 246, quoting *Adeeb*, 787 F.2d at 1343, as well as unsupported by any admissible evidence for purposes of summary judgment.

With respect to Counts Two and Three and the undisclosed horses, trailers and riding mower, intent may be inferred from surrounding circumstances including "badges of fraud" that constitute circumstantial evidence of intent, or a course of conduct. *Retz,* 606 F.3d at 1200, (citing *Emmett Valley Assocs. v. Woodfield (In re Woodfield)*, 978 F.2d 516, 518 (9th Cir. 1992)); *Adeeb*, 727 F.2d at 1343, *Devers*, 759 F.2d at 753-54; and *Searles*, 317 B.R. at 380. Buck had the duty under § 521(a)(1) to file his Schedules and SOFA under penalty of perjury. His answer and brief admit that the assets were not disclosed, but he argues they were of nominal value, the failure to disclose was inadvertent, and he even contends: "By transferring the horses he was arguably preserving assets of the bankruptcy estate for the benefit of creditors." None of these contentions are supported by affidavit or evidence.

The Ninth Circuit wrote in *Retz* that a debtor in bankruptcy has a "duty to share full information with the Trustee." 606 F.3d at 1204. The opportunity to obtain a fresh start is "conditioned upon truthful disclosure." *Id.*, quoting *Aubrey v. Thomas (In re Aubrey)*, 111 B.R.

268, 274 (9th Cir. BAP 1990). The Ninth Circuit in *Retz* affirmed that the debtor's failure to inform the trustee of a transfer is circumstantial evidence of intent to hinder, delay or defraud creditors "because there is no other reasonable explanation" for the delay. *Retz*, 606 F.3d at 1204. Likewise in the instant case, Buck's failure to list the flatbed trailer and mower in his Schedules, and failure to list the transfers of the horses and trailer in his SOFA, is circumstantial evidence of his intent to hinder or defraud the Trustee. Buck's transfer of the horses and horse trailer, which he argues preserved those assets of the estate for the benefit of the creditors, actually interfered with the Trustee's duty to collect and administer those assets, and thus showed intent to hinder or delay the Trustee. His explanation is not reasonable. *Id.*

Buck was not honest or truthful in his Schedules and SOFA. Judgment will be entered against Buck denying his discharge under § 727(a)(2) under Counts One, Two and Three

### III. § 727(a)(4) – False Oaths.

Counts Four, Five and Six of the UST's amended complaint seek denial of Buck's discharge under § 727(a)(4) for false oaths based upon: Buck's signing of his Schedules knowing he had failed to list property in which he had an interest (Court Four); Buck's signing of his SOFA under oath knowing that he failed to disclose the transfers of the horses and horse trailer (Count Five); and Buck's testimony at the § 341 meeting of creditors that the information in his Schedules and SOFA was true and accurate (Count Six). Buck's answer admits that he did not disclose the transfers of horses and horse trailer in his SOFA or at the § 341 meeting, and that he did not disclose the flatbed trailer and riding mower in his Schedules. Buck argues in his brief: "Jesse may have made a false statement in connection with the horse and horse trailer, the false oath was related to a material fact, the oath was made knowingly; however, the oath was

13

**NOT** made fraudulently." With respect to the flatbed trailer and riding mower Buck contends that his failure to disclose was inadvertent and an oversight, but not intentional or fraudulent. Lastly, Buck argues that he addressed the UST's concerns when he "filed an amended Petition."

The Ninth Circuit provided the analysis under § 727(a)(4) in *Retz*:

> Section 727(a)(4)(A) states: "The court shall grant the debtor a discharge, unless . . . the debtor knowingly and fraudulently, in or in connection with the case--(A) made a false oath or account...." 11 U.S.C. S 727(a)(4). "A false statement or an omission in the debtor's bankruptcy schedules or statement of financial affairs can constitute a false oath." *In re Khalil*, 379 B.R. at 172. "The fundamental purpose of § 727(a)(4)(A) is to insure that the trustee and creditors have accurate information without having to conduct costly investigations. *Id.* (quoting *Fogal Legware of Switz., Inc. v. Wills (In re Wills)*, 243 B.R. 58, 63 (9th Cir. BAP 1999)).
>
> To prevail on this claim, a plaintiff must show, by a preponderance of the evidence, that: "(1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently." *Roberts v. Erhard (In re Roberts)*, 331 B.R. 876, 882 (9th Cir. BAP 2005) (citing *In re Wills*, 243 B.R. at 62). A finding of fraudulent intent is a finding of fact reviewed for clear error. *First Beverly Bank v. Adeeb (In re Adeeb)*, 787 F.2d 1339, 1342 (9th Cir. 1986).

*Retz*, 606 F.3d at 1196-97.

All that is required for a denial of discharge under the plain language of § 727(a)(4)(A) is a single false oath or account. *In re Wright*, 364 B.R. 51, 73 (Bankr. D. Mont. 2007); *Smith v. Grondin (In re Grondin)*, 232 B.R. 274, 277 (1st Cir. BAP 1999) (*citing Torgenrud v. Schmitz (In re Schmitz)*, 224 B.R. 149, 150-51, 17 Mont. B.R. 43, 44-46 (Bankr. D. Mont. 1999)). "A false oath may involve a false statement or omission in the debtor's schedules." *Wills*, 243 B.R. at 62; *Searles*, 317 B.R. at 377, citing *Wills*; *Wright*, 364 B.R. at 73. The UST's SOUF and Buck's answer and brief establish that Buck made one false oath in his Schedules by not disclosing his interest in the flatbed trailer and riding mower, that he made another false oath by not disclosing

14

the transfer of the 3 horses and horse trailer in his SOFA, and that he made a third false oath by not disclosing the transfer of horses and horse trailer during his creditors' meeting.  Buck does not dispute making any of these false oaths, so there is no genuine issue of material fact regarding the existence of those false oaths.

The Court finds that Buck's false oaths relate to material facts, which *Retz* explains are material if they bear a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property.  606 F.3d at 1198; *Khalil* 379 B.R. at 173, quoting *Wills*, 243 B.R. at 62.  An omission or misstatement that "detrimentally affects administration of the estate" is material.  *Id.*  Buck's interests in the flatbed trailer, riding mower, and his transfer of horses and horse trailer, were or were related to property of the estate.  Therefore, his false oaths concern the discovery of assets and existence and disposition of Debtor's property and thus are material.

The third element is whether the debtor acted knowingly in making the false oath.  *Retz*, 606 F.3d at 1198; *Roberts*, 331 B.R. at 882.  "A debtor 'acts knowingly if he or she acts deliberately and consciously.'" *Retz*, 606 F.3d at 1198, quoting *Khalil*, 379 B.R. at 173 (quoting *Roberts*, 331 B.R. at 883)).  Buck admits at page 3 of his brief that his false oath regarding the horses and horse trailer was made knowingly.  The UST's SOUF at fact 2 establishes that he signed his petition, Schedules and SOFA under penalty of perjury.  This Court finds that he signed his Schedules and SOFA deliberately and consciously knowing that they included false oaths, which he repeated at his § 341 meeting.  *See Retz*, 606 F.3d at 1198.

The only disputed element is whether Buck made the false oaths with fraudulent intent, which he denies.  The UST bears the burden of showing that:  (1) Debtor made the false

15

statements or omissions in his Schedules and SOFA; (2) at the time he knew they were false; and (3) he made them with the intention and purpose of deceiving the creditors. *Retz*, 606 F.3d at 1198-99 quoting *Khalil*, 379 B.R. at 173 (quoting *Roberts*, 331 B.R. at 884). Buck insists that his false oaths were not made fraudulently, that the omitted flatbed trailer and riding mower were of nominal value, and that he did not receive any assets or money for the horses and horse trailer. However, for purposes of summary judgment Buck did not establish genuine issues of material fact on those points of contention because he did not file a Statement of Genuine Issues as required by rule.

> The Ninth Circuit wrote:
>
> Intent is usually proven by circumstantial evidence or by inferences drawn from the debtor's conduct. *Devers v. Bank of Sheridan, Mont. (In re Devers)*, 759 F.2d 751, 753-54 (9th Cir. 1985); *see also In re Roberts*, 331 B.R. at 884. Reckless indifference or disregard for the truth may be circumstantial evidence of intent, but is not sufficient, alone, to constitute fraudulent intent. *In re Khalil*, 379 B.R. at 173-75.

*Retz*, 606 F.3d at 1199.

The requisite fraudulent intent "must be actual, not constructive". *Wills* 243 B.R. at 64, citing *Devers*, 759 F.2d at 753. Buck's false oaths in his Schedules and SOFA omitting the assets and the transfers of horses and trailer easily establish reckless indifference or disregard of the truth, and as such constitute circumstantial evidence of fraudulent intent under *Retz*. Further, because Buck submitted no affidavits in opposition, there is no evidence to the contrary.

The Court notes that "[a] reckless disregard of both the serious nature of the information sought and the necessary attention to detail and accuracy in answering may rise to the level of fraudulent intent necessary to bar a discharge." *Wright*, 364 B.R. at 76, quoting 6 COLLIER ON

BANKRUPTCY, ¶ 727.04[1][a] (15th ed. rev.).  This Court discussed a debtor's responsibility in completing schedules and statements of financial affairs in *Torgenrud v. Wolcott (In re Wolcott)*, 194 B.R. 477, 486 (Bankr. D. Mont. 1996):

> As to the false declarations in Wolcott's Schedules and Statement of Affairs, the preparation and filing of such documents for the Bankruptcy Court "is no idle task." *Torgenrud v. Smith* (*In re Smith* ), 14 Mont. B.R. 228, 232 (Bankr. D. Mont.1995). Courts take a very dim view of the " 'intentional and fraudulent omission of property from sworn schedules [which] amounts to an offense punishable by the Criminal Code.' " *In re Woodson*, 839 F.2d 610, 614 (9th Cir.1988). "Numerous cases hold that the debtor has a duty to prepare schedules carefully, completely and accurately." *In re Mohring*, 142 B.R. 389, 394 (Bankr.E.D.Cal.1992), *aff'd mem.*, 153 B.R. 601 (9th Cir. BAP 1993), *aff'd mem.*, 24 F.3d 247 (9th Cir.1994). Moreover, a debtor must correct such documents filed with a court upon learning of their inaccuracy or incompleteness. *Id.* The debtor has "no discretion in this regard." *Smith*, 14 Mont.B.R. at 233. Furthermore, a debtor has an affirmative duty to "cooperate with the trustee in preparing a 'complete inventory of the property of the debtor.' " *Mohring*, 142 B.R. at 394. Failure to follow these precepts results in denial of a debtor's general discharge for harboring an intent to conceal property. 11 U.S.C. § 727(a)(2); *Devers*, 759 F.2d at 753-754.

Buck's last argument is that he amended his petition and thereby addressed the concerns with the refund, omitted assets and undisclosed transfer.  The facts above show that Buck filed amended Schedules and SOFA on November 12, 2010, almost seven and one-half months after he filed his Chapter 7 petition, 7 months after the § 341 meeting and two weeks after the UST commenced this adversary proceeding.  Amendment of schedules by a debtor is liberally allowed pursuant to F.R.B.P. 1009(a) as a matter of course at any time before the case is closed.  *Arnold v. Gill (In re Arnold)*, 252 B.R. 778, 784 (9th Cir. 2000), (citing *Martinson v. Michael*, 17 Mont. B.R.  192, 198, 163 F.3d 526, 529 (9th Cir. 1998)).  However, Buck's delayed amendment of his Schedules and SOFA after discovery of his false oaths does not obviate his making false oaths.

In *Retz* the Ninth Circuit affirmed a finding of evidence of fraudulent intent in a

significant number of falsehoods and omissions, together with the debtor's failure to amend the Schedules and SOFA.  606 F.3d at 1199, citing *Khalil*, 379 B.R. at 173-75 (other citations omitted).  In the instant case Buck filed his Schedules and SOFA with false oaths and material omissions, and he did not amend his Schedules and SOFA for more than 7 months, until after the UST commenced this adversary proceeding to deny his discharge.  This Court finds and concludes that Buck failed to satisfy his duty to correct his Schedules and SOFA upon learning of their inaccuracy or incompleteness.  *Wolcott*, 194 B.R. at 486, citing *Mohring*, 142 B.R. at 394.

In sum, the Court concludes that the UST satisfied its burden under § 727(a)(4) to show by a preponderance of the evidence that Buck knew that his omissions of assets and transfers were false at the time he signed his Schedules and SOFA, and that he made them with the purpose of deceiving the Trustee and hinder his administration of the estate.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction via 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b)(1).

2. This is a core proceeding under 28 U.S.C. § 157(b)(2)(J).

3. Defendant failed to comply with Mont. LBR 7056-1(a)(2) by failing to file a "Statement of Genuine Issues."  Pursuant to LBR 7056-1(a)(3) all material facts in the Plaintiff's Statement of Uncontroverted Facts are deemed admitted.

4. Plaintiff satisfied its burden of proof under FED. R. BANKR. P. 7056, incorporating FED. R. CIV. P. 56(c) of showing that no genuine issue of material fact exists with respect to its contentions under Counts One, Two, Three, Four, Five and Six of the amended complaint, and that the UST is entitled to summary judgment as a matter of law denying the Defendant's discharge under 11 U.S.C. §§ 727(a)(2) and 727(a)(4)(A).

**IT IS ORDERED** a separate Order and Judgment shall be entered in conformity with the above granting the UST's Motion for Summary Judgment (Dkt. 12) and entering Judgment denying Defendant/Debtor Jesse W. Buck's discharge pursuant to 11 U.S.C. §§ 727(a)(2) and 727(a)(4)(A).

        BY THE COURT

        */s/ Ralph B. Kirscher*
        HON. RALPH B. KIRSCHER
        U.S. Bankruptcy Judge
        United States Bankruptcy Court
        District of Montana